# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| GERI H., | Case No.  4:19-CV-00172-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | **(Dkts.  1, 4 & 17)** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security[1], | |
| Defendant. | |

Pending is Petitioner Geri H.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 17) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits.  *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a 49-year-old woman with a history of neck issues and degenerative disc disease.  AR[2] 20-21.  On December 17, 2014, roughly four years after her first cervical fusion, Petitioner filed an application for social security disability income ("SSDI") as well as an application for supplemental security income ("SSI") alleging a disability onset date of June 2,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi will be substituted, therefore, as the respondent in this suit.  Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

[2] Citations to "AR __" refer to the cited page of the Administrative Record (Dkt. 12).

**MEMORANDUM DECISION AND ORDER - 1**

2014.  AR 15, 20; *see also* Pt.'s Br. at 1 (Dkt. 17).  In these applications, Petitioner alleged that

she was unable to work due the following conditions: back problems, fibromyalgia, hip

problems, shoulder problems, anxiety disorder, and degenerative disc disease.  AR 732.

The claim was denied initially and on reconsideration and Petitioner requested a hearing in front

of an Administrative Law Judge ("ALJ").  AR 15.  On April 12, 2018, the claim went to a

hearing before Administrative Law Judge ("ALJ") Michele Kelley.  *Id.*  On May 2, 2018, the

ALJ issued a decision that was unfavorable to Petitioner.  AR 15-25.

Petitioner appealed this decision to the Appeals Council.  The Council denied Petitioner's

request for review, making the ALJ's decision the final decision of the Commissioner of Social

Security.  AR 1-6.

Having exhausted her administrative remedies, Petitioner filed this case.  Petitioner raises

two points of error.  First, Petitioner argues that the ALJ misevaluated the opinions of a physical

therapist named Jay Ellis, DPT, who assessed Petitioner's functional capacity on June 27, 2017.

Pt.'s Br. at 1 (Dkt. 17).  Second, Petitioner maintains that the ALJ failed to provide legitimate

justifications for discrediting Petitioner's symptom testimony and instead discounted Petitioner's

claims based on improper "sit and squirm" observations.  *Id.*

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th

Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are

conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See*

*Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

**MEMORANDUM DECISION AND ORDER - 2**

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098.  Considerable weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§

**MEMORANDUM DECISION AND ORDER - 3**

404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that although Petitioner continued to work part time as a realtor after the onset of her alleged disability, this employment did not rise to the level of substantial gainful activity. AR 17-18.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe

**MEMORANDUM DECISION AND ORDER - 4**

impairments: lumbar and cervical degenerative disc disease (status-post cervical fusion (x3)).

AR 18.  The ALJ also discussed Petitioner's history of other conditions, including

hypothyroidism, fibromyalgia, allergic rhinitis/sinusitis, hyperlipidemia, obesity, depression, and

anxiety.  *Id.*  The ALJ found that these conditions "caused only transient and mild symptoms and

limitations," were well-controlled with treatment, did not met the 12-month durational

requirement, were not supported by the medical record, or did not cause more than minimal

limitations and were not, therefore, severe impairments.  *Id.*

The third step requires the ALJ to determine the medical severity of any impairments;

that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.

Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the

answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor

equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds

to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ found that Petitioner did not

have an impairment or combination of impairments that met or medically equaled the severity of

one of the listed impairments.  AR 19.

In the fourth step of the evaluation process, the ALJ decides whether the claimant's

residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.

20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do

physical and mental work activities on a sustained basis despite limitations from her

impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she

performed within the last 15 years, or 15 years prior to the date that disability must be

established, if the work was substantial gainful activity and lasted long enough for the claimant

**MEMORANDUM DECISION AND ORDER - 5**

to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ

found that Petitioner would be capable of performing sedentary work, with certain additional

limitations, including that she can only sit 6 hours a day; can only occasionally reach overhead;

can only occasionally bend, stoop, crouch, or kneel; and can only occasionally climb ladders,

scaffolds, stairs, and ramps.  AR 19-20.  The ALJ further found that Petitioner would need to be

permitted to change positions every 30 to 60 minutes for a few minutes while staying on task.

AR 20.

      In the fifth and final step, if it has been established that a claimant can no longer perform

past relevant work because of his impairments, the burden shifts to the Commissioner to show

that the claimant retains the ability to do alternate work and to demonstrate that such alternate

work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th

Cir. 2014).  If the claimant can do such other work, he is not disabled; if the claimant cannot do

other work and meets the duration requirement, he is disabled.  Here, the ALJ found that as of

the date of the decision, Petitioner could perform her past relevant work as a legal assistant and

as an administrative clerk.  AR 22-23.  In the alternative, the ALJ found that Petitioner was

capable of working full time as a new account interviewer, a surveillance systems monitor, and

an order clerk.  AR 24.  Based on these findings, the ALJ concluded that Petitioner was not

disabled.  *Id.*

## **DISCUSSION**

I.   <u>DPT Ellis's Functional Capacity Evaluation</u>

      Petitioner's first challenge on appeal is to the ALJ's treatment of the opinions of a

physical therapist named Jay Ellis, DPT.  In June 2017, after Petitioner had recovered from her

**MEMORANDUM DECISION AND ORDER - 6**

third neck surgery, one of Petitioner's primary care doctors referred Petitioner to DPT Ellis for a functional capacity evaluation. AR 20-21, 1265, 1298-1300. DPT Ellis conducted the evaluation on June 27, 2017 over the course of four hours. AR 1274.

DPT Ellis documented the evaluation as well as his conclusions about Petitioner's functioning in a 33-page report. AR 1267-1297. The first page of the report is a cover page, the second two pages contain DPT Ellis's summary of his conclusions, and the remaining 30 pages detail the various test and examination results at a more granular level. *Id.* Based on this data, DPT Ellis concluded that Petitioner "can perform most activities while seated," with the caveat that Petitioner "needs to stand about every 15 to 20 minutes of being seated, and then she can return to her position." AR 1267. In the section of the report entitled "limitations," DPT Ellis further opined that:

> [Petitioner] is unable to perform full squats, but is able to perform partial squats. Her pain increased in the low back SI region as exercise or weight resistance increases. She is moderately restricted in any bending, lifting due to bulging disks in her low back and the many problems and surgeries in her cervical and upper thoracic spine. She has difficulty crawling and requires the use of her upper extremity to climb back up to standing. Due to the fusion in her cervical spine, she is not able to lift her head up. Forward bending during standing or sitting increases discomfort and modification is needed to perform activity while bending. The pain becomes sharp and aching. [Petitioner] demonstrated numerous problems with her upper back, neck, with only occasional problems with her low back for bending, squatting, and lifting. She consistently had pain and increased problems as weight were increased to the Heavy and Max limits. She should have a 15 lbs. weight restriction. During the test, she proved that she could not safely lift over 18 lbs. when lifting or carrying at waist height. She was at her max with 14 lbs. when lifting overhead. The only test that she could not complete was the "Elevated Work". The "Stairs" and "Step Ladder" activities demonstrated her deconditioning as her heart rate did not exceed her max allowable heart rate, but did come close.

*Id.* DPT Ellis concluded that these physical limitations would present a barrier to Petitioner's return to work "unless major and significant modifications" can be made.

**MEMORANDUM DECISION AND ORDER - 7**

A. <u>The Standard for Reviewing the Opinions of Physical Therapists</u>

The regulations that guide an ALJ's evaluation of medical opinion evidence have long

distinguished between medical providers who are considered "acceptable medical sources" and

"other" medical sources.  *See* 20 C.F.R. §§ 1513(a) and (d) (2013) (defining the terms

"acceptable medical sources" and "other" sources prior to the 2017 amendments to the

regulations); 20 C.F.R. §§ 404.1502(a) and (d) (defining the terms "acceptable medical source"

and "medical source" after the 2017 amendments); *see also Revels v. Berryhill*, 874 F.3d 648,

654-655, (9th Cir. 2017) (outlining the varying levels of deference that ALJs were required to

afford "acceptable" and "other" medical sources for claims filed prior to March 27, 2017).  On

January 18, 2017, the Social Security Administration published comprehensive revisions to these

regulations.  *See* 82 Fed. Reg. 5844.

These amendments expanded the category of providers who qualify as "acceptable

medical sources" to include, for example audiologists and advanced practice nurses.  20 C.F.R.

§§ 404.1502(a).  The amendments, however, did not change the classification of physical

therapists.  Under both the old and new regulations, physical therapists are considered "other"

non-accepted medical sources.  *Id.*; *see also* 20 C.F.R. §§ 1513(a) and (d) (2013); *Revels*, 874

F.3d at 665 (a physical therapist was not an "acceptable medical source"); *Roberts v. Berryhill*,

734 F. App'x 489, 490 (9th Cir. 2018) (unpublished) (same).

The import of this classification depends on when a claim is filed.  For claims filed after

March 27, 2017, the amendments to the regulations substantially changed the framework an ALJ

uses to evaluate the medical source opinions, including dismantling all but two of the

programmatic distinctions between "acceptable medical sources" and all other medical sources.

*See* 82 Fed. Reg. 5844, 5844-5845; *see also* 20 C.F.R. § 404.1520c.  For claims filed before

**MEMORANDUM DECISION AND ORDER - 8**

March 27, 2017, however, ALJs must continue to afford greater deference to medical opinions issued by acceptable medical source, such as doctors, than to medical opinions issued by other medical sources, such as physical therapists.  20 C.F.R. § 404.1527.

Because Petitioner's claim was filed before March 27, 2017, but the ALJ did not issue her opinion after March 27, 2017, the rules governing the ALJ's treatment of DPT Ellis are found in 20 C.F.R. §§ 404.1527(f) and 416.927(f).[3]  Under these rules, an ALJ is required to consider "other" medical source opinions and, where the opinion may have an effect on the outcome of the case, explain the weight given to such opinions or otherwise discuss the opinions in sufficient detail to allow a subsequent reviewer to follow the ALJ's reasoning.  20 C.F.R. §§ 404.1527(f) and 416.927(f).  In other words, an ALJ may not reject the relevant testimony of a non-accepted medical source without comment.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  To be upheld, an ALJ's must provide "germane" reasons before discounting the relevant opinions of such sources.  *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015).

### B.  The ALJ's Treatment of DPT Ellis's Opinions

In her decision, the ALJ explicitly discussed DPT Ellis's functional capacity evaluation. The ALJ summarized the results of the evaluation as follows:

---

[3] Prior to 2017, the regulations did not specifically address how an ALJ should consider relevant opinions from other non-accepted medical sources.  Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *3 (August 9, 2006).  To fill this gap, the Social Security Administration issued SSR 06-03p, which directed ALJs to use the same factors used to evaluate the opinions of non-accepted medical providers as those used to evaluate acceptable medical source opinions. *Id.*  This ruling was rescinded with the passage of the 2017 amendments.  *See* 82 Fed. Reg. 5844, 5845.  But its substance was not lost.  In order to provide clear and comprehensive guidance regarding the consideration of "other" medical sources for claims filed before March 27, 2017, the Social Security Administration revised 20 C.F.R. §§ 404.1527 and 416.927, effective March 27, 2017, to incorporate the policies formerly found in SSR 06-03p.  *See* 20 C.F.R. §§ 404.1527(f) and 416.927(f).  These revised rules govern Petitioner's claim.

**MEMORANDUM DECISION AND ORDER - 9**

> [The] results of [the functional capacity evaluation] showed [that Petitioner] could lift/carry a maximum of 15 pounds, and she could carry less than 10 pounds frequently. She could occasionally reach overhead, and she could occasionally bend, stoop, crouch, kneel and climb ladders/stairs.  During testing, her gait was functional and within normal limits.  Despite increased muscle tone and upper back spasms, coupled with some diminished strength in her neck, truck [sic] and left forearm, her coordination was within functional limits and all other muscle groups had intact strength.

AR 21.  The ALJ elected to give DPT Ellis's opinions "significant weight" because they were "based on objective testing."  *Id.*  Consistent with this finding, the ALJ incorporated the limitations summarized directly above into the RFC.  AR 19-21.

Petitioner maintains that the ALJ erred in characterizing certain of these limitations and in omitting other limitations noted in DPT Ellis's report from the RFC.  Pt.'s Br. at 10-13 (Dkt. 17).  Specifically, Petitioner points to three putative conflicts between the RFC and DPT Ellis's report.  First, the ALJ found that Petitioner could "carry less than 10 pounds frequently," whereas Petitioner reads DPT Ellis's opinion as limiting her to carrying five pounds frequently. *Id.* at 11.  Second, DPT Ellis found that Petitioner could not "lift her head up," but the ALJ did not include this limitation in the RFC.  *Id.* at 11-12.  Third and finally, the ALJ found that Petitioner could only needed breaks every 30 to 60 minutes to change positions, which was almost twice as long as the 15 to 20 minutes DPT Ellis opined Petitioner could sit before she would need to switch to a standing position.  *Id.* at 12.  For the reasons outlined below, the Court finds that none of these discrepancies rise to the level of reversible error.

### i.  The Lifting and Carrying Restrictions

Petitioner accuses the ALJ of using "clever word play" to purposefully mischaracterize DPT Ellis's weight restrictions.  *Id.* at 11.  The truth is greyer.  DPT Ellis only recommended one definitive weight restriction: that Petitioner not lift or carry more than 15 pounds.  AR 1267.  The ALJ adopted this limitation and incorporated it into the RFC.  AR 19.

**MEMORANDUM DECISION AND ORDER - 10**

DPT Ellis's report also contains a table that documents Petitioner's "observed physiologic effort level" when lifting and carrying specific weights in six different positions (for example, right carry, left carry, and front carry).  AR 1268.  This table matches different "physiologic effort" levels with certain predetermined percentages, indicating how often the person can engage in the activity during a normal working day.  It also includes a recommendations column, which DPT Ellis left blank.  This table indicates that Petitioner can lift and carry five pounds "frequently," can lift 13 pounds "waist to floor" occasionally, and can lift and carry 15 pounds occasionally in all other configurations.  *Id.*  The Court agrees that the most natural reading of this table is that Petitioner is limited to carrying 5 pounds frequently, but that is not the only possible reading.  The table itself is not self-explanatory and DPT Ellis did not elect to incorporate any restrictions in Petitioner's ability to lift or carry less than 15 pounds into the "limitations" section of the report or the "recommendations" section of the table.  AR 1267-1268.  In these circumstances, the Court finds that the ALJ's interpretation of the table as showing Petitioner could carry less than 10 pounds frequently, while questionable and an oversimplification, is not indicative of malintent.

Whether this interpretation could survive substantial evidence review is not a question this Court need answer.  Even if the ALJ erred in his interpretation of DPT Ellis's weight restrictions, the record clearly indicates that the error is harmless.

In the social security context, reversal on account of error is not "automatic," but requires a "case-specific" determination of prejudice.  *Ludwig*, 681 F.3d at 1053.  While this is not a high standard, "where harmlessness is clear and not a 'borderline question,' remand for reconsideration is not appropriate."  *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011).  For example, the Ninth Circuit has refused to remand where an ALJ's mistakes are irrelevant or

**MEMORANDUM DECISION AND ORDER - 11**

inconsequential to the ALJ's ultimate disability conclusion. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015); *Stout*, 454 F.3d at 1055 (9th Cir. 2006).  Similarly, where an ALJ errs in failing to discuss or failing to credit testimony, that error will be harmless if the court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh*, 792 F.3d at 1173.  As the party attacking the agency's determination, the burden is on Petitioner to show prejudice under these rules. *Ludwig*, 681 F.3d at 1053; *McLeod*, 640 F.3d at 887.

Petitioner has not and cannot satisfy that burden.  Under the most natural reading of DPT Ellis's report, which is the reading Petitioner advances, Petitioner is limited to carrying five pounds frequently, but is able to carry up to 13-15 pounds occasionally.  AR 1268.  A restriction to sedentary work would fully accommodate these limitations.  AR 19-20.  "To determine the physical exertion requirements of work in the national economy, [the Social Security Administration] classif[ies] jobs as sedentary, light, medium, heavy, and very heavy."  20 C.F.R. § 404.1567.  Light work requires, among other things, "the frequent lifting or carrying of objects weighing up to 10 pounds."  § 404.1567(b).  By contrast, sedentary work only requires "*occasionally* lifting or carrying articles like docket files, ledgers, and small tools" with a maximum lifting limit of "10 pounds at a time." § 404.1567(a) (emphasis added).  In other words, sedentary work does not require more than occasionally lifting and carrying objects weighing up to 10 pounds, which it is undisputed Petitioner may do.  AR 1267-1268.

Here, the ALJ found that Petitioner was capable of returning to her past employment as a legal assistant and an administrative clerk.  AR 22.  In the alternative, the ALJ found that Petitioner could transition to working as a new account interviewer, surveillance systems monitor, and order clerk.  AR 24.  Of these jobs, the only job that was not fully sedentary was the

**MEMORANDUM DECISION AND ORDER - 12**

legal assistant position, which was categorized as light work because it involved carrying boxes. AR 73-74, 76. The vocational expert testified that Petitioner's prior work as an administrative assistant was sedentary as performed. AR 73-74. The remaining three jobs are definitionally sedentary. AR 76; *see also* Dictionary of Occupational Titles ("DOT") 205.367-014, 379.367-010, and 209.567-014 (setting forth the strength requirements for new account interviewers, surveillance systems monitors, and order clerks). These four sedentary jobs, which are unaffected by the alleged error, are sufficient standing alone to support the ALJ's disability finding. AR 23-24; *see also Garrison*, 759 F.3d at 1011 (a claimant is not disabled if she can return to past work or can perform alternate jobs which exist in sufficient number in the economy). Any error in the ALJ's treatment of Petitioner's weight restrictions is, consequently, harmless.

*ii.   Petitioner's Neck Extension Immobility*

The second discrepancy Petitioner identifies between the RFC and DPT Ellis's opinions relates to her neck mobility. DPT Ellis found that Petitioner was unable to "lift her head up" because of her cervical fusions. AR 1267. Despite accepting DPT Ellis's evaluation, the ALJ never mentioned this limitation in her decision and did not incorporate the limitation into her RFC. AR 15-25.

This is not good practice. An RFC should generally include all physical limitations that are credited by the ALJ and supported by substantial evidence. *Valentine v. Comm'r SSA*, 574 F.3d 685, 690 (9th Cir. 2009) (an "RFC that fails to take into account a claimant's limitations is defective"); *see also* SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996) (the "RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities").

**MEMORANDUM DECISION AND ORDER - 13**

Once again, however, Petitioner has failed to show how the ALJ's oversight prejudiced her.  Petitioner does not assert that her inability to tilt her head up from a forward-looking position prevents her from engaging in past employment or in any of the other jobs the ALJ found she could perform.  Pt.'s Br. at 11-12 (Dkt. 17).  Rather, Petitioner seeks to establish prejudice based on a showing of uncertainty.  Specifically, Petitioner argues that the testimony of a vocational expert was required to determine whether Petitioner's neck extension limitation (i.e., her inability to look upwards) would or would not preclude Petitioner from working and that the Court cannot guess at what such testimony would show.  *Id.*  The Court recognizes that arguments such as these are often sufficient to establish prejudice.  Where an ALJ's error creates a gap in the record, Petitioner is not required to show exactly what the missing testimony would have been to demonstrate prejudice.  *McLeod*, 640 F.3d at 887-888.  Genuine uncertainty about whether an error affected the result of the disability determination will suffice.  *Id.* at 888; *see also Marsh*, 792 F.3d at 1173.

Under the unique facts of this case, however, the Court finds that the uncertainty on which Petitioner relies is too flimsy and conjectural to satisfy Petitioner's burden of showing a "substantial likelihood of prejudice."  *See Ludwig*, 681 F.3d at 1053 (holding that a "claimant need not necessarily show what other evidence might have been obtained had there not been error, but does have to show at least a 'substantial likelihood of prejudice'"); *see also McLeod*, 640 F.3d at 888 (warning that the "mere" possibility that further evidence might establish prejudice to the claimant is not enough to warrant a remand); *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (rejecting the argument that an ALJ's failure to discuss material lay witness testimony constitutes "per se" prejudice).

**MEMORANDUM DECISION AND ORDER - 14**

In reaching this conclusion, the Court finds *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993) particularly instructive.  In *Matthews*, like in this case, the petitioner argued that the ALJ erred by failing to include a "staying in one position" limitation into the hypothetical question the ALJ asked the vocational expert.  *Id.* at 681.  The Ninth Circuit held that this omission was harmless because (i) the ALJ had implicitly rejected the relevance of the limitation, not ignored it entirely and (ii) "other reliable evidence," including the Petitioner's own testimony, confirmed that the petitioner's "staying in one position" limitation was immaterial to the petitioner's ability to perform his past work as a receiving clerk/inspector.  *Id.*  The Ninth Circuit explained that in these circumstances, testimony from a vocational expert may be "useful" but it not required.  *Id.* The same reasoning applies here.

First, having carefully considered the ALJ's decision, the Court is satisfied that the ALJ did not completely overlook Petitioner's neck extension limitation, as Petitioner claims.  As outlined above, the ALJ expressly discussed DPT Ellis's report and indicated she was giving the report "significant weight."  AR 21.  The ALJ also summarized the remainder of Petitioner's medical record, including noting that another medical provider who evaluated Petitioner after her final cervical fusion had found that Petitioner's "neck range of motion was limited, but without pain."  *Id.*  From these discussions and findings, it is clear that the ALJ read DPT Ellis's report and was aware of and accepted Petitioner's neck immobility.

While the ALJ did not restate DPT Ellis's neck extension limitation in the decision or in the RFC, this is not the red flag it might be in other circumstances.  DPT Ellis's report spanned 33-pages and included incredibly detailed information about a variety of Petitioner's physical abilities, including, for example, how far she could squat, how strong her fingers can pinch, and how far her trunk can rotate in a seated position.  AR 1265-1297.  It would not have been

**MEMORANDUM DECISION AND ORDER - 15**

pragmatic for the ALJ to restate and analyze all this information in her decision.  *See Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").  Nor do the regulations require that.  When assessing the testimony of a lay witness, an ALJ is only required to discuss the portions of the testimony that "may have an effect on the outcome of the case."  20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2).

Given the amount of information in DPT Ellis's report, the ALJ understandably made a variety of implicit findings about what portions of the evaluation were necessary to discuss and which were inconsequential.  While the ALJ may have erred in deciding Petitioner's neck limitation did not make that cut, like in *Matthews*, the ALJ's omission has an obvious explanation: the ALJ concluded that Petitioner's neck limitation did not impact Petitioner's ability to work.  Indeed, in the one place where the ALJ mentions Petitioner's neck mobility limitations, the ALJ immediately stresses that Petitioner's fusion hardware was "stable," that Petitioner was continuing to work as a real estate agent, and that Petitioner had reported that her pain medication was "effective in controlling her pain and allowing her to work."  AR 21.  This discussion taken together with the ALJ's (i) crediting of DPT Ellis's report and (ii) finding that Petitioner could continue working in various office-like settings provides sufficient guideposts for the Court to follow the ALJ's reasoning.

Second, as was the case in *Matthews*, prejudice cannot be presumed from the mere absence of testimony from a vocational expert about the impact of neck mobility restrictions on an individual's ability to work.  Petitioner is correct that where the testimony of a vocational expert is *required*, an ALJ's failure to solicit that testimony generally will not be harmless.  *See Matthews*, 10 F.3d at 681.  Petitioner is incorrect, however, to assume that a vocational expert is

**MEMORANDUM DECISION AND ORDER - 16**

always necessary to determine how a particular impairment impacts a claimant's ability to work. In *Matthews*, the Ninth Circuit stressed that "*other reliable evidence* of a claimant's ability to perform specific jobs" may displace the need for testimony from a vocational expert. *Id.* This is consistent with the regulations and Social Security Rulings, which give an ALJ discretion over when to use a vocational expert. *See* 20 C.F.R. § 404.1560(b)(2) (when determining whether a claimant can perform her past relevant work, the ALJ "may" use the services of vocational experts, but also can consider information from the claimant or other people about the demands of the claimant's past work); 20 C.F.R. § 404.1566(e) ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we *may* use the services of a vocational expert or other specialist. We will decide whether to use a vocational expert or other specialist.") (emphasis added); SSR 85-15, 1985 WL 56857, at *3 and 7 (1985) (explaining that "[i]n many cases" an ALJ may "need to consult a vocational resource" to determine the impact of a non-exertional impairment, but noting such testimony may not be required "for relatively simple issues," for example, "crawling on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world of work");  SSR 83-14, 1983 WL 31254, at *4 (in simple cases, the "[u]se of a vocational resource *may* be helpful;" in complex situations, by contrast, it may be "necessary") (emphasis added).

Here, the ALJ was not required to question the vocational expert about Petitioner's neck extension issues because the record was already replete with evidence showing that this limitation did not prevent Petitioner from engaging in work-related activities.  As Respondent emphasizes, Petitioner's own testimony indicates that her inability to extend her neck backwards

**MEMORANDUM DECISION AND ORDER - 17**

(to look up) does not stop her from working.  At the April 12, 2018 disability benefits hearing,

Petitioner's attorney questioned her about how her medical conditions impact her life.  AR 53-

68.  During this examination, Petitioner's counsel asked Petitioner several questions about her

neck mobility, including asking Petitioner to affirm that she does not "look up."  AR 58-59.

Notably, Petitioner responded "[t]he looking down is what hurts the most" and then clarified that

looking "down" and "to the side" were her main issues.[4]  AR 58-59.  Petitioner did not mention

any problems caused by not looking up.  *Id.*

Petitioner's later testimony confirms that the limitation Petitioner experiences with neck

extension is not a work impediment.  At the time of the disability hearing, many months after her

final cervical fusion, Petitioner averred that she continues to work part time "from her phone,"

including "communicat[ing] with potential clients and current clients," "checking emails,"

"creat[ing] documents," and handling marketing, networking, and scheduling.  AR 59-60.

Petitioner also reported that she had an "office available" with a desktop computer that she

occasionally uses "to print stuff out or whatever."  AR 59.  When asked whether she could work

at a computer for three hours a day, Petitioner indicated that she retained the ability to do this

intermittently, but would need to miss "a day or two a week."  AR 62.  Finally, Petitioner

affirmed that she could file for two or three hours a day with breaks.  AR 67.  Taken as a whole,

---

[4] Petitioner does not raise any challenge in this appeal to the ALJ's omission of Petitioner's
alleged neck rotation and flexion limitations into the RFC.  *See generally* Pt.'s Br. (Dkt. 17).
The Court presumes this is because the vocational expert testified that an inability to look down
would not prevent Petitioner from working as a new account interviewer or surveillance system
monitor.  AR 81.  Regardless, Petitioner has waived any arguments related to these limitations by
failing to raise them with specificity in the opening brief.  *Arpin v. Santa Clara Valley Transp.
Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (issues which are not specifically and distinctly
argued and raised in a party's opening brief are waived); *see also See Carmickle v. Comm'r of
Social Sec. Admin*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (same).  The Court limits its
harmless error analysis, therefore, to the likelihood that the extension limitation documented by
DPT Ellis (i.e., the inability to look upwards) eroded Petitioner's ability to work.

**MEMORANDUM DECISION AND ORDER - 18**

this testimony makes it abundantly clear that Petitioner's neck extension immobility – a constant condition – does not prevent her from engaging in sedentary work. *See* 20 C.F.R. § 404.1565(a) ("Work you have already been able to do shows the kind of work that you may be expected to do.").

DPT Ellis's own report further supports this conclusion. According to this report, Petitioner retains some residual neck extension. AR 1271 (noting that normal neck extension is 45 degrees and Petitioner's observed neck extension was only 30 degrees). More importantly, DPT Ellis opined that despite her impairments Petitioner could still "perform most activities while seated." AR 1267.

In summary, "other reliable evidence" definitively shows that Petitioner's neck extension limitation was irrelevant to whether Petitioner could return to sedentary, office-like work. In these circumstances, an ALJ is not *required* to attain vocational expert testimony and an ALJ's failure to formally incorporate the irrelevant limitation into the RFC will be harmless. *Matthews*, 10 F.3d at 681; *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (reasoning that any error in the ALJ's omission of postural limitations from the RFC was "harmless since sedentary jobs require infrequent stooping, balancing, crouching, or climbing.").

To the extent Petitioner believed vocational testimony would have been a helpful addition to the ALJ's analysis, Petitioner had a fair opportunity to submit this information to the Social Security Administration during her disability hearing. Petitioner was represented by the same counsel at this hearing as represents her in this lawsuit. AR 45-83. At the ALJ's invitation, Petitioner's counsel examined the vocational expert, including asking about various limitations that the ALJ had not included in her hypotheticals. AR 78-82. Petitioner's counsel now complains that the only question the vocational expert was asked about neck mobility related to

**MEMORANDUM DECISION AND ORDER - 19**

Petitioner's inability "to look down," but did not mention Petitioner's inability to look up.  Pt.'s Br. at 11 (Dkt. 17).  But this was Petitioner's counsel's own question.  AR 80-81.  In faulting the ALJ for the framing of this question, Petitioner ignores that the ALJ was not the only person at the hearing with responsibility for developing the record.

As the person seeking disability benefits, it was Petitioner's burden to establish that she could no longer engage in her past relevant work due to her impairments.  *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016).  This included a requirement that Petitioner show she could no longer work as an administrative assistant, a job Petitioner described as "a lot of sitting at the desk working on the computer."  AR 73.  Far from putting on evidence or making arguments to show that her neck extension limitations prevented her from engaging in this type of work, Petitioner's own testimony and Petitioner's counsel's questioning indicated that Petitioner's neck extension limitations did not impact her ability to do office or computer work.[5]  Absent a showing of harm, Petitioner is not entitled to a remand to introduce other evidence she now

---

[5] Respondent argues that these facts support a finding that Petitioner forfeited her right to "add new [neck] limitations" to the RFC on appeal.  Some Ninth Circuit case law supports this position.  *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) ("[A]at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."); *see also Mojarro v. Berryhill*, 746 F. App'x 672, 675 (9th Cir. 2018) (unpublished) (finding that a petitioner "waived his argument that he could not perform the jobs identified by the vocational expert . . . due to his eyesight or hearing by failing to challenge this during the administrative proceeding").  Other cases, however, call into question whether a claimant can ever waive the ALJ's duty to explicitly address whether a claimant's known limitations impact her ability to work.  *See, e.g., Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017) ("our law is clear that a counsel's failure [to ask a vocational expert about a whether a particular physical limitation conflicts with the expert's testimony] does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning"); *Simpson v. Berryhill*, 717 F. App'x 670, 671 (9th Cir. 2017) (unpublished) (suggesting *Meanel's* waiver rules only apply where a claimant rests his arguments on "additional evidence" that was not presented to the ALJ).  Because Petitioner has not established that she was harmed by the alleged error, the Court need not wade into this unsettled territory.

**MEMORANDUM DECISION AND ORDER - 20**

believes would have been helpful in carrying her burden of proof.  Because "other reliable

evidence" demonstrates that Petitioner's neck extension issues are immaterial to her ability to

engage in sedentary work using computers and phones, the Court can confidently conclude the

ALJ's failure to include this limitation in the RFC was harmless.  *Matthews*, 10 F.3d at 681.

### iii.   *Standing Up Every 15 to 20 Minutes*

The final challenge Petitioner raises to the ALJ's treatment of DPT Ellis's functional

capacity evaluation involves Petitioner's need to take regular breaks from sitting.  DPT Ellis

opined that Petitioner would need "to stand about every 15 to 20 minutes of being seated, and

then she can return to her position."  AR 1267.  Despite crediting this evaluation, ALJ crafted an

RFC finding that Petitioner only needed to change position every 30 to 60 minutes when

working.  AR 20.  The ALJ did not provide any explanation for the discrepancy between DPT

Ellis's 15-to-20-minute recommendation and the 30-to-60-minute limitation contained in the

RFC.  AR 15-25.  This was an error.  *See Valentine*, 574 F.3d at 690 (an RFC must include all

limitations); *Stout*, 454 F.3d at 1053 (an ALJ may not silently reject lay testimony).

The error, however, was clearly harmless.  As Petitioner recognizes, her counsel asked

the vocational expert two compound questions that addressed whether an individual who needed

to stand every 15 to 20 minutes of being seated would be able to work as a new account

interviewer, a surveillance systems monitor, and an order clerk.  AR 80-81.  Petitioner's counsel

framed these questions to include postural limitations that were more restrictive that DPT Ellis

endorsed.  *Compare* AR 80-81 *with* AR 1267.  Specifically, Petitioner's counsel asked the

vocational expert to consider an individual who can only sit for 15 to 20 minutes and then needs

to stand an equivalent amount of time.  AR 80.  Unsurprisingly, the vocational expert indicated

the hypothetical person Petitioner's counsel described – who needed to stand half of the time at

**MEMORANDUM DECISION AND ORDER - 21**

work – would only be able to maintain full-time employment if they could keep working while standing.  AR 80.  With this caveat, the vocational expert testified that standing up for 15 to 20 minutes every 15 to 20 minutes would preclude working as an order clerk, but would not "eliminate" the capacity to work as a new account interviewer or a surveillance systems monitor.  AR 80-81.[6]

Petitioner maintains that this testimony is insufficient to show she can work in these unskilled jobs because the vocational expert never specifically addressed "whether a person who was required to stand up every 15-20 minutes, for an undisclosed amount of time before returning to work, would be able to perform" the jobs.  Pt.'s Br. at 12 (Dkt. 17).  This argument is groundless.

The vocational expert's testimony clearly indicates that the mere act of standing up every 15 to 20 minutes would not stop someone from working as a new account interviewer or a surveillance systems monitor.  AR 81.  DPT Ellis's evaluation did not require anything more.  Specifically, DPT never opined (i) that Petitioner needed to stand more than momentarily or (ii) that she would be unable to work in a standing position should she choose to stand for some "undisclosed" longer period.  AR 1267.  All DPT Ellis recommended is that Petitioner stand up "about every 15 to 20 minutes" of being seated before returning "to her position."  *Id.*  The compound question that Petitioner's counsel posed to the ALJ more than accounted for this postural limitation.

The only remaining question is whether the two jobs that the vocational expert affirmatively indicated a person could perform with this limitation are sufficient, standing alone,

---

[6] The vocational expert was not asked and never addressed whether a sit/stand limitation would prevent Petitioner from returning to her past work as a legal assistant or an administrative assistant.  AR 74-82.

**MEMORANDUM DECISION AND ORDER - 22**

to support the ALJ's finding of non-disability.  A person is not disabled when an ALJ finds that

the person can perform work "which exists in significant numbers either in the region where

such individual lives or in several regions of the country."  42 U.S.C. § 1382c(a)(2)(B).

Determining what constitutes a "significant number" of jobs is normally question of fact for the

ALJ.  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 527-528 (9th Cir. 2014).  Where, as here,

an ALJ finds that three jobs exist in significant numbers in the national economy, but has not

addressed whether a particular subset of those jobs, which are unaffected by the ALJ's error, also

exist in significant number, the harmless error analysis asks whether the number of jobs

remaining in the subset is sufficiently numerous so that the Court can confidently conclude that

the error did not impact the ultimate disability determination.  *See Marsh*, 792 F.3d at 1173.

 Here, the ALJ found that 44,000 new account interviewer jobs exist in the national

economy; 37,000 surveillance systems monitor jobs (eroded 50%) exist in the national economy;

and 65,000 order clerk jobs exist in the national economy.  AR 24.  When the erroneous order

clerk job is subtracted from this list, the remaining number of jobs Petitioner can perform

amounts to 62,500.  This is more than double the 25,000 jobs that the Ninth Circuit in *Gutierrez*

found to have satisfied the "significant numbers" criteria.  *Gutierrez*, 740 F.3d at 528.  The Court

can confidently conclude, therefore, that Petitioner would not have qualified for disability even if

DPT Ellis's sit/stand limitation had been properly incorporated into the RFC.  *See Shaibi v.

Berryhill*, 883 F.3d 1102, 1110 n.7 (9th Cir. 2018) (any error in finding the petitioner could work

as a weight tester was harmless because the ALJ also found that the petitioner could work as a

leaf tier and ampoule sealer, representing 70,697 jobs nationwide); *see also Knuckles v. Saul*,

806 F. App'x 513, 515 (9th Cir. 2020) (unpublished) (citing to *Gutierrez's* 25,000 benchmark to

conclude that "the ALJ's error in including mail sorter as a position [the claimant] could perform

**MEMORANDUM DECISION AND ORDER - 23**

was harmless because the ALJ also found [the claimant] could perform the jobs of price marker and laundry sorter and those jobs exist in significant numbers in the national economy"); *Garner v. Saul*, 805 F. App'x 455, 459 (9th Cir. 2020) (unpublished) (where the petitioner argued that several of the jobs listed by the vocational expert were outside her reasoning limitations, the alleged error was harmless because the one remaining job, which the petitioner could perform, had 30,000 positions available nationally); *Buckins v. Berryhill*, 706 F. App'x 380, 381 (9th Cir. 2017) (unpublished) (an ALJ's errors were "inconsequential" where petitioner could still work in four different occupations with a total of 31,008 jobs available nationally).

## II. Petitioner's Pain and Symptom Testimony

Petitioner's second claim of error on appeal relates to the ALJ's rejection of her pain and symptom testimony.  Pt.'s Br. at 13-15 (Dkt. 17).  When evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms.  *Id.*

Generalized findings will not satisfy this standard.  The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."  *Brown-Hunter v. Colvin*, 806

**MEMORANDUM DECISION AND ORDER - 24**

F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46).  This requires that the ALJ "identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988)).

Here, the ALJ provided multiple particularized reasons for discrediting Petitioner's claims of disabling neck and back pain.  These reasons included (1) the absence of any medical treatment around the onset of Petitioner's alleged disability, (2) the medical evidence showing no changes in Petitioner's lumbar region compared with when she was working, (3) multiple reports Petitioner made to her medical providers indicating that her pain was controlled with medication, (4) Petitioner's continued part-time work as a real estate agent, (5) Petitioner's normal gait, (6) frequent notes saying Petitioner was "fully oriented," speaking in complete sentences, "well groomed," had "a neutral and appropriate affect and mood," and had "logical thoughts" despite complaining of significant pain, (7) Petitioner's ability to drive 45 minutes to the disability hearing and then sit the entirety of the 55-minute disability hearing, without any visible signs of discomfort, and (8) the medical evidence's general failure to support a finding that Petitioner's "condition significantly limits her ability to perform basic work activities."  AR 20-22.

Petitioner maintains that several of these reasons were illegitimate.  First, Petitioner contends the "absence of supporting evidence" was not a valid basis for the ALJ to question her testimony.  Pt.'s Br. at 14 (Dkt. 17).  Petitioner overstates the law.  The ALJ may rely on a lack of corroborative medical evidence to discount a claimant's subjective allegations so long as it is not the *sole* basis for doing so.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (an ALJ may consider a lack of corroborating medical evidence as one factor in the credibility determination); *Hazelton v. Saul*, 812 F. App'x 453 (9th Cir. 2020) (unpublished) (same).  That is exactly what the ALJ did here.  To justify discrediting Petitioner's testimony, the ALJ pointed

to both affirmative evidence regarding Petitioner's neck and back condition and their impact on her functioning, as well as the lack of evidence of more serious issues.  AR 20-22.  Petitioner's first argument, therefore, fails.

Petitioner's second critique of the ALJ's credibility determination is that the ALJ erred in citing her normal speech, mood, orientation, and grooming as evidence of lack of pain.  Pt.'s Br. at 14 (Dkt. 17).  Petitioner's insistence that these evaluations are completely irrelevant falls flat. At the disability hearing, Petitioner testified that her neck and back pain has caused her to struggle with personal care, including no longer wearing makeup because it was painful to apply and struggling to dry her hair.  AR 67-68.  Petitioner averred that she has considered shaving her head to reduce these burdens.  AR 68.  Consistent with this testimony, in her written function report, Petitioner stated that her disability caused her the following problems with personal care: (i) "I don't bathe as often as I should because it is exhausting;" (ii) "I don't care for my hair as I used to because it is exhausting;" (iii) "I don't shave as often now because it is exhausting;" and (iv) "It hurts to bend over to trim toe nails."  AR 748.  This testimony belies Petitioner's argument that her grooming is immaterial to whether she is experiencing pain.

As for the ALJ's reliance on Petitioner speaking in full sentences, having a neutral mood, and possessing logical thoughts, the Court agrees that these are not clear and convincing reasons, standing alone, to disbelieve a claimant's complaints of debilitating pain.  They are not, however, so disconnected from an assessment of Petitioner's pain to be irrational or inappropriate for the ALJ to have considered as one factor among many.  At a general level, Petitioner's normal evaluations indicate that Petitioner's pain was not so bad that it visibly affected her speech, mood, or cognition during her medical appointments.  Petitioner's second argument, consequently, fails.

**MEMORANDUM DECISION AND ORDER - 26**

Petitioner's third and final argument is that the ALJ erred in relying on "sit and squirm" reasoning to discount Petitioner's testimony.  Specifically, Petitioner maintains that the ALJ's decision must be reversed because the Ninth Circuit has taken a hard line forbidding ALJs from relying on a Petitioner's failure to manifest external symptoms of pain at the disability hearing as a ground for discounting their testimony.  Pt.'s Br. at 15 (Dkt. 17).  Petitioner's argument rests on one-sentence of the ALJ's lengthy analysis.  This sentence reads:

> Moreover, [Petitioner] sat the entire 55-minute hearing, in no apparent discomfort, and her drive to the hearing site was 45 minutes long.

AR 21-22.  In arguing that this single sentence warrants reversing and remanding the ALJ's entire credibility analysis, Petitioner once again overrepresents the severity of the controlling law.

The Ninth Circuit "sit and squirm" jurisprudence on which Petitioner relies holds that a claimant's failure to exhibit signs of pain at the disability hearing is not substantial evidence for the ALJ to discredit that claimant's testimony.  *See Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984) ("The fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible."); *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985).  The Ninth Circuit has routinely refused, however, to remand an ALJ's decision for the inclusion of such comments where the ALJ provided other, valid reasons for rejecting the claimant's testimony.  *See Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) (where the ALJ's decision "included an evaluation of [the claimant's] testimony, the stated opinions of both the examining and treating physicians, objective medical evidence, and [commented on the claimant's] demeanor at the hearing," the "inclusion of the ALJ's personal observations does not render the decision improper"); *Morgan v. Commissioner of the SSA*, 169

**MEMORANDUM DECISION AND ORDER - 27**

F.3d 595, 600 (9th Cir. 1999) (same).  In *Orn v. Astrue*, 495 F.3d 625, (9th Cir. 2007), for example, the Ninth Circuit was faced with a claim that the ALJ erred in rejecting the petitioner's claims of fatigue and difficulty concentrating because the petitioner was "able to testify in a responsive manner without any noticeable problems with memory or thought content."  *Id.* at 639.  The Ninth Circuit confirmed that this observation could not form the "sole basis for discrediting" the petitioner's testimony.  *Id.*  The Ninth Circuit reasoned, however, that the ALJ was not prohibited from mentioning his personal observations when evaluating Petitioner's "overall" credibility.  *Id.* at 639-640.  Whether the ALJ's reliance on this observation was a reversible error, therefore, depended on whether the ALJ's "other reasons for rejecting" the petitioner's testimony failed or withstood scrutiny.  *Id.* at 640.

In this case, the ALJ provided numerous reasons, other than Petitioner's behavior at the disability hearing, for discrediting Petitioner's testimony.  AR 20-22.  Petitioner has not attacked the majority of these reasons, let alone shown any error involving them.[7]  The ALJ's credibility determination must, therefore, be affirmed.

---

[7] To take one example, the first reason the ALJ provided for rejecting Petitioner's testimony was the arbitrariness of the date Petitioner identified as the onset of her alleged disability.  AR 20. The ALJ correctly noted that this date – June 2, 2014 – had no clinical significance as Petitioner was not receiving any medical care for her allegedly disabling conditions at or around this time. Substantial evidence supports this finding.  *Id.*  The last time Petitioner sought treatment for neck or back pain, before allegedly becoming disabled by these conditions, was November 27, 2012. AR 837-839.  This was approximately 19 months before her alleged disability onset date.  In the lengthy period between this visit and Petitioner allegedly becoming disabled, Petitioner continued working 30 hours a week as an administrative assistant in a real estate business.  AR 734.  During this period, Petitioner did not report that she was experiencing debilitating back or neck pain to her doctors.  For example, Petitioner's last medical visit before the alleged onset of her disability was a November 18, 2013 visit to her primary care doctor to seek treatment for worsening congestion, fevers, coughing, earaches, and facial pain.  AR 876.  During this visit Petitioner reported increasing anxiety due to her mother being in hospice.  Other than these issues, her doctor reported that she was "doing well" and her "review of systems" was "benign." *Id.*  Similarly, Petitioner's next visit after her disability onset was a September 11, 2014 visit to her primary care doctor to seek treatment for a cough.  AR 875.  Petitioner once again reported

## ORDER

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 17) are **DENIED,** and the decision of the Commissioner is **AFFIRMED.**

DATED: September 10, 2021

Raymond E. Patricco
U.S. Magistrate Judge

---

that she was otherwise "doing well." *Id.* It was not until October 2014, four months after her disability supposedly began, that Petitioner returned to her doctor with complaints of neck pain, upper extremity tingling, and finger tingling, possibly related to her 2010 neck surgery. AR 872-873. Given this series of events, the ALJ reasonably concluded that the date on which Petitioner claims she became disabled is unmoored from any medical treatment. Petitioner does not address this portion or of the ALJ's reasoning and has, consequently, waived any challenge to the ALJ's reliance on these facts to discredit her testimony. The same is true of Petitioner's failure to challenge the myriad of other reasons the ALJ provided for finding her testimony unbelievable. *Carmickle*, 533 F.3d at 1161 n. 2.

**MEMORANDUM DECISION AND ORDER - 29**